# City Of Lexington et al. v. Davis et al.

June 24, 1949.

Leer Buckley and A. E. Funk, Jr. for appellants.

F. Selby Hurst, Calvert T. Rozell, W. E. Darragh, Weldon Shouse and Robert M. Odear for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

We have presented here the narrow question as to whether or not a meeting of the Board of Commissioners of the City of Lexington in an adjourned session at the home of Mayor Tom Mooney was a public meeting within the meaning of KRS 89.550.

The Board of Commissioners of the City of Lexington met in its regular session at the City Hall on the night of December 30, 1948, apparently having as its chief objective the passage of a revised licensing ordinance to supersede the old licensing ordinance which expired on that date. For some reason or other there had been delay in revising the City business and professional license tax ordinance. In orderly procedure such an ordinance must be introduced, given its first reading, and then lie over one week for public inspection, except in the event 4 of the 5 members of the Board of Commissioners deem it advisable and necessary to suspend the rules and give such an ordinance two readings on the same night. Having failed to introduce and have

one reading prior to December 30th, it became necessary to suspend the rules and give the ordinance two readings on the same night in order to pass it. At the regular meeting on the night of December 30th only three of the five members of the Board of Commissioners were present. Henry Skillman, one of the Commissioners, was at the time confined in a local hospital and Mayor Tom G. Mooney was seriously ill and confined to his home.

Apparently it was generally understood through publicity in the local press that a revised license ordinance would be introduced and passed on the night of December 30th and that in order to do this the 3 Commissioners able so to do would meet in regular session at the regular place, at which time and place the revised ordinance would be introduced and given its first reading, and that the meeting would then be adjourned to the home of the Mayor for the purpose of suspending the rules and giving the ordinance its second reading and final passage.

For the purpose of protesting the passage of this revised ordinance, numerous citizens met in the first meeting to register their protest to the passage of the revised ordinance. The ordinance was introduced and given its first reading. Protests were heard after which the meeting adjourned to the home of the Mayor. As stated above, the question is: Was this adjourned meeting a public meeting?

We have two cases in Kentucky in which this question was raised. One, Wallace v. City of Louisa, 217 Ky. 419, 273 S. W. 720. There the City Council of Louisa met in its regular meeting place but adjourned to the Louisa National Bank to open some construction bids, apparently for the reason that at the Bank adding machines would be accessible for tabulating the bids. In addition thereto the Mayor's office was in the Bank. It will be noted also that several days elapsed from the time the bids were opened at the Bank until the contract was finally made. However, after the contract was made the minutes of the meeting were read and approved at the regular meeting of the City Council held at its regular place. We held that this meeting was public. Citizens could and did freely come and go during the time

of discussion and opening of the bids. The facts in the Louisa case do not at all parallel the facts of this case and little or no assistance can be had in shaping our consideration here.

The other case is Town of Springfield v. People's Deposit Bank, 111 Ky. 105, 63 S. W. 271, 272. There the Town Council was called into special session by its clerk. The meeting was held in a saloon at which an ordinance was passed levying taxes on real property. In that case we said:

"Such loose methods as shown in this case, if tolerated, would practically leave the property of the citizens subject to seizure and appropriation at the will and upon the act of a mere caucus of a town council; that is, at a casual meeting of a majority of its members, at any place within the town, and at which their constituents would have no opportunity to be present, and by that potent influence, or legitimate representation, have their views and interests directly considered. It was to prevent such evils that the present statutes on this subject were enacted. The judgment of the circuit court is affirmed."

Appellants insist that the facts are so completely different in the Town of Springfield case that it cannot possibly furnish any authority toward the forming of a consideration of the case at bar. We cannot agree with appellants in this respect. On the other hand the reasoning of the chancellor appears to us quite logical. He said:

"The plaintiffs have cited the case of Town of Springfield v. People's Deposit Bank, 111 Ky. 105, 63 S. W. 271, but the defendants contend this case is not in point. Sometimes when you look at the background of a case, it is more, or perhaps less, in point than it first appears. When this case was decided in 1901 Judge O'Rear, who wrote the opinion, was a very ardent temperance advocate, and I doubt if he would have entered a saloon even to represent a client. At that time few, if any, women, would have entered a saloon, especially in a small town, even to protest such a vital matter as a tax measure. In fact, women were prohibited by ordinance from entering a saloon at that time. Therefore, although a saloon was a public place in that the general

public was invited there, there were those who by law or custom were excluded and it was not a public place under the Statute, because many of the public would, for conscientious reasons, not have felt free or at ease to go there. Therefore, this case is very much in point here because it establishes the principle that a public place within the meaning of the Statute must not only be one to which the public generally is invited and may freely attend, but it must also be a place from which no part of the citizens are expressly excluded or who may be excluded by reason of not feeling they may freely attend.''

Let us now look for legislative guidance in the matter. KRS 89.550 provides:

''The board of commissioners shall meet at least once a week for the transaction of business. It shall fix by ordinance the times of holding its regular meetings. Any special meeting may be called by the mayor or by two commissioners. All meetings shall be public.''

We note the requirements. The Board of Commissioners shall meet at least once a week for the transaction of business. It shall fix by ordinance the times of holding its regular meetings. Provision is made for the calling of special meetings. But note next that the *meetings* shall be *public*. This provision circumscribes the Commissioners and grants to the public a right because the public is, or should be, interested in what takes place at these meetings.

We must, therefore, look at the right the public has. In the instant case an emergency existed. If the revised ordinance was to be passed it was necessary to invoke the extraordinary procedure of suspending the regular rules. No one would attempt to say that there was a deliberate aim upon the part of the Commissioners to meet in secrecy; to conceal anything from the public; to exclude any person; or to mislead the public in any way. There was no concealed activity nor anything done indicative of umbrage. But, a public meeting presupposes the right of the public freely to attend such meetings with the concurrent right freely to express any approval or disapproval of any action or course about to be taken. Anything which tends to ''cabin, crib or confine'' the

public in this respect would be destructive of the right expressly provided in KRS 89.550 above.

Here we have a Mayor admittedly seriously ill and confined to his bedroom on the second floor at his home. We merely ask the question and in the asking, the answer spontaneously presents itself. Would the ordinary citizen who had in mind a serious protest to something about to be done feel free to go into the bedroom of a man who was seriously ill to make such protest even though he had been invited so to do? In the second place, in the absence of invitation, even though the Mayor had been a well man, would there be freedom upon the part of the public to go into his home merely on the announcement that the regular session would adjourn to the Mayor's home? The objective upon the part of the Commissioners was commendable but we conclude that to permit such procedure would create a situation that might furnish opportunity to set up a facade for secrecy and possibly even legislation in executive session. Such a meeting is not a public meeting as contemplated under the statute above.

The court below adjudged the revised ordinance, as finally passed at the adjourned session, to be null and void, and declared the prior licensing ordinance to be still in force and effect. We think the court properly so adjudged.

Wherefore, the judgment is affirmed.