541 P.2d 1137

**WASHINGTON SCHOOL DISTRICT NO. 6 OF MARICOPA COUNTY, Arizona and Norma Botkin, Donald B. Cooke, Daniel Campbell, Peggy Dillehunt and Barry M. Starr, Members of and Constituting the Board of Trustees of said School District, Petitioners,**

v.

**SUPERIOR COURT OF MARICOPA COUNTY, State of Arizona, Robert W. Pickrell, Judge, and Beverly V. MARTIN and Joyce A. Snelling, Real Parties in Interest, Respondents.**

No. 12135.

Supreme Court of Arizona,

In Banc.

Nov. 7, 1975.
Rehearing Denied Dec. 2, 1975.

Moise Berger, Maricopa County Atty. by Calvin H. Udall, Sp. Deputy County Atty., Phoenix, for petitioners.

Lewis & Roca by Douglas L. Irish, John P. Frank, Phoenix, for respondents real parties in interest.

STRUCKMEYER, Vice ·Chief Justice.

Petitioners seek relief by this special action from an order of the Superior Court of Maricopa County and The Honorable Robert W. Pickrell, Judge thereof, which directed that a permanent injunction issue restraining petitioners "from proceeding with the selection or acquisition of textbooks for use in the common schools of Washington District No. 6 based upon any reference to the reports or actions of the Textbook Selection Committees." We accepted jurisdiction in prohibition pursuant to the authority of Article 6, § 5, Constitution of Arizona.

Petitioner Washington School District No. 6 is a duly organized school district under the provisions of Chapter 4, Title 15, Arizona Revised Statutes, and the individually named petitioners are the duly elected, qualified and acting members of the Board of Trustees of the Washington School District. By A.R.S. § 15–102(18), the State Board of Education is required to prescribe textbooks for the common schools, and to prepare a list of not less than three nor more than five textbooks for each grade and each subject taught in the common schools for the selection by the school districts of one book from such list for each student. The books are to be purchased by the school districts and those chosen cannot be changed for five years. The Board of Trustees is directed to enforce the courses of study and select all textbooks used in the schools from the lists

authorized by the State Board of Education, A.R.S. § 15–442(A)(2).

In an attempt to comply with its statutory obligations, the petitioner school board established a Textbook Evaluation Committee to act in an advisory capacity to the Superintendent and the Board of Trustees on textbook selection. The Textbook Evaluation Committee is wholly a creation of the Washington School Board. Its members have no official status by statute, and no authority to act except as the Board may direct.

In its advisory capacity, the Committee was directed to study all materials in a given subject area which have been placed on the approval list by the State Board of Education, evaluate all texts, develop a rank order of the texts based on the individual evaluations and submit the rank order recommendations to the Superintendent for referral to the Board of Trustees for final action. It consists of seven classroom teachers, six lay members, the Assistant Superintendent for Educational Services of the District, one building principal and one member of the district educational services staff. The Committee met frequently during the months of February and March of 1975, and submitted its recommendations to the Superintendent on or about April 4, 1975, which were then forwarded to the members of the Board of Trustees on or about April 7, 1975. Respondent Martin sought to attend and observe the meetings of the Textbook Committee, but was refused admittance with the explanation that the Committee meetings were not subject to A.R.S. § 38–431 et seq., hereinafter called the "Open Meeting Law."

The Committee submitted its recommendations to the Superintendent of the District on April 4, 1975. On April 7, copies were given to the members of the Board of Trustees and respondent Martin, and made available to all interested persons. Thereafter, on April 10, 1975, the Board considered the Committee's recommendations and oral presentations by seven

persons, including Martin, together with their written recommendations. At the next regular meeting on April 24, 1975, the recommendations of the Committee were again considered, together with the oral recommendations of sixteen persons, many of whom had also filed written recommendations and suggestions for the Board's consideration. The Board of Trustees did not take final action at that time, but the matter was placed on the agenda for the next regular meeting on May 8, 1975. Prior to that meeting the respondent court issued a temporary restraining order.

The procedure by the Board of Trustees in the above paragraph was in meticulous compliance with *Town of Paradise Valley v. Acker,* 100 Ariz. 62, 411 P.2d 168 (1966), wherein we quoted with approval from *City of Lexington v. Davis,* 310 Ky. 751, 221 S.W.2d 659 (1949):

> "'* * * A public meeting presupposes the right of the public freely to attend such meetings with the concurrent right freely to express any approval or disapproval of any action or course about to be taken. Anything, which tends to "cabin, crib or confine" the public in this respect would be destructive of the right * * *.'" (Emphasis in original) 100 Ariz. at 65, 411 P.2d at 170.

Respondents Martin and Snelling filed a complaint, alleging the violation of the "Open Meeting Law" and alleging that the Board of Trustees intended to take final action on the textbook selections in violation of the Arizona Administrative Procedure Act. Respondent Court first granted a temporary restraining order directing petitioners not to proceed further with respect to the selection of textbooks and at the same time issued an order to show cause why respondents should not be awarded a temporary injunction. The hearing thereon resulted in the order whose enforcement petitioners seek to prohibit.

There are two issues necessary to be settled in order to resolve this litigation; the first is whether Arizona's "Open

Meeting Law" applies to committees whose members are not members of a governing body and who merely advise the governing body.

A.R.S. § 38–431.01(A) reads:

"A. All official meetings at which any *legal action* is taken by *governing bodies* shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and *proceedings*." (Emphasis supplied)

Originally, § 38–431 read:

"In this article, unless the context otherwise requires:

1. 'Governing bodies' means the governing bodies of the state, or political subdivisions thereof, which are supported in whole or in part by tax revenues or which expend tax revenues.

2. 'Proceedings' means the transaction of any functions affecting citizens of this state by an administrative or legislative body of the state or of any of its counties or municipalities or other political subdivisions when such a body is composed of three or more members and is charged with the transaction of such functions under any statute or under any rule or regulation of such legislative or administrative body or agency." Laws of 1962, Ch. 138, § 2.

In 1973, an opinion of the Attorney General was requested, which essentially posed the questions as to what a board may do in a meeting closed to the public, and when must the public be admitted to the board meetings. In part, the Attorney General's opinion stated:

"The present statutes are ambiguous as to the legal limit of the executive meeting. * * * Statutory wording indicates that the public need be admitted only to board meetings at which legal action is taken. * * * The problem created by this statutory language is that legal action is not defined."

Thereafter, in 1974, § 38–431, *supra,* was amended by adding the following:

" 'Legal action' means a collective decision, commitment or promise made by a majority of the members of a governing body consistent with the constitution, charter or bylaws of such body, and the laws of this state."

The statute as amended forbids the members of a governing body from forming committees comprised of their own members which meet secretly to decide a particular matter and thereafter hold a public meeting to take the final necessary legal action. Palpably, the "Open Meeting Law" does not apply to such advisory committees as the Textbook Evaluation Committee whose membership is not composed of, or whose recommendations are not binding on the governing body.

The attention of this Court has been directed to certain cases which interpret statutes of somewhat analogous import. In *McLarty v. Board of Regents of Univ. Sys. of Georgia,* 231 Ga. 22, 200 S.E.2d 117 (1973), the Georgia statute provided:

" 'All meetings of any State department, agency, board, bureau, commission . . . at which official actions are to be taken . . .' are to be public." 200 S.E.2d at 119.

The Georgia court said:

"This language is clear. It applies to the meetings of the variously described bodies which are empowered to act officially for the State and at which such official action is taken." 200 S.E.2d at 119.

In holding that a committee composed of faculty members and students of the University of Georgia, organized for the purpose of reviewing the Student Senate's recommended allocation of Student Activity Funds, was not within the purview of the Act, the court said:

"The 'Sunshine Law' does not encompass the innumerable groups which are organized and meet for the purpose of collecting information, making recommendations, and rendering advice but which have no authority to make governmental

decisions and act for the State. What the law seeks to eliminate are closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name. It declares that the people, who possess ultimate sovereignty under our form of government, are entitled to observe the actions of those described bodies when exercising the power delegated to them to act on behalf of the people in the name of the State. There is no such compelling reason to require public meetings of advisory groups. They can take no official action. Generally their reports are submitted in writing and are available to the public well in advance of any official action and are considered by the official body in public meeting.

Accordingly the Student Activity Fund Committee, having no authority to take official action, is not a body which comes within the purview of the 'Sunshine Law' and it is not required to hold its meetings in public." 200 S.E.2d at 119.

Another case quite similar to the instant case is that of *Town of Palm Beach v. Gradison*, Fla., 296 So.2d 473 (1974). In that case a planning committee of lay citizens was chosen to guide a planning firm in advising the town council which had undertaken the updating and revision of the town's zoning ordinances. Florida has a statute providing that the meetings of any state agency are declared to be public meetings and open to the public. Four of the six judges held that the meeting of the planning advisory committee should not have been held in private. Two judges dissented. We think the statements in the dissent accurately reflect the law applicable to Arizona:

" * * * it has never before been suggested, by either the Courts or the Legislature, that meetings of all unofficial and purely advisory groups be likewise public and give notice of meetings held and otherwise act to insure that their

meetings are 'public.' The statute simply does not include such persons.

* * * * * *

The Legislature having chosen not to include such advisory and purely private groups under the mandate of the statute, the Courts are powerless to extend the statute beyond the clear intent of the Legislature." 296 So.2d at 480.

We hold that the Washington School District did not violate the "Open Meeting Law" in excluding the public from the meetings of the Textbook Evaluation Committee.

Petitioners also urge that the Superior Court erred in ruling that the Board of Trustees in establishing the Textbook Evaluation Committee must conform to the requirements of Arizona's Administrative Procedure Act, A.R.S. § 41–1001 et seq.

Before proceeding further, it should be observed that a school district is a political subdivision of the state. *Morgan v. Board of Sup'rs.*, 67 Ariz. 133, 192 P.2d 236 (1948). As such, it is a public agency. Its board of trustees is designated as its governing body, A.R.S. § 15–431, and is authorized by statute to prescribe rules for the government of the district, A.R.S. § 15–432(C), A.R.S. § 15–441(A).

This State's Administrative Procedure Act was adopted in 1952 from the Model Administrative Procedure Act as drafted by the National Conference Commissioners on Uniform State Laws. *See* An Administrative Procedure Act for Arizona, 2 Arizona Law Review, 17, 20, 22. It is an act "RELATING TO AGENCIES, BOARDS, COMMISSIONS, DEPARTMENTS AND QUASI-JUDICIAL BODIES OF THE STATE OF ARIZONA." Laws of 1952, Ch. 97. A.R.S. § 41–1001(1) provides:

" 'Agency' means every agency, board, commission, department or officer, authorized by law to exercise rule-making powers or to adjudicate contested cases * * *."

And § 41–1004 A provides:

"Every rule adopted by each agency shall be certified and filed with the office of the secretary of state or shall be of no force or effect. * * *."

The word "rule" is of wide and varied significance, depending upon the context. Webster's Third International Dictionary, among other definitions, defines "rule" as:

"A prescribed suggested or self-imposed guide for conduct or action: a regulation or principle."

A.R.S. § 41–1001(7) defines "rule" as:

" * * * each agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, or declaratory rulings issued pursuant to § 41–1007 or intra-agency memoranda."

The word "policy" in the phrase "law or policy" tends to give an element of uncertainty to the definition. However, it is obvious that the appointment of a textbook evaluation committee is not a policy statement of general applicability, nor in any way is the approval or disapproval of the findings or recommendations of the committee a policy statement. Neither does the appointment of a textbook evaluation committee describe the organization, procedure or practice requirements of the agency. The establishment by the Board of the Textbook Evaluation Committee concerns only the internal management of the school district and does not affect private rights or procedures available to the public. The private rights and procedures available to the public are set forth and protected by our decision in *Town of Paradise Valley v. Acker*, quoted *supra*, and it cannot be said that petitioners have not adhered thereto in giving members of the public more than a reasonable opportunity to discuss and express their views.

The respondents argue that in selecting textbooks the school district was bound to comply with those provisions of the Administrative Procedure Act requiring notice, filing and public hearings on rules. Implicit in this argument is the premise that the Act requires adoption of rules for the selection of textbooks. We reject any such notion.

A.R.S. § 15–442 prescribes the general powers and duties of the school board. It requires, for example, among other things, that the board visit every school in the district, provide transportation for any child when deemed in the best interest of the district, manage and control school property, rent and repair school property, enforce a course of study and select textbooks. These matters are clearly within the normal day-to-day operation, management and administration by the school district of its internal affairs. We can find no suggestion in the Administrative Procedure Act that the Legislature has required the promulgation and adoption of written rules filed with the Secretary of State to carry out such powers granted to the district. To straitjacket school boards and management with inflexible, pre-cast rules of procedure would slow the operation and management of school districts to a grinding stop. Private rights are not here in question, because it cannot be said that respondents have a right to have written rules promulgated which the school district is compelled to procedurally follow in selecting textbooks.

For the foregoing reasons, the petitioners' prayer for relief is granted, and the Superior Court is prohibited from enforcing its restraining order and from proceeding further in Cause C–312470.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.