KENNETH G. WILSON ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.

COTTER, C. J., BOGDANSKI, HEALEY, PARSKEY and KELLY, Js.

Argued January 11—decision released July 1, 1980

*Albert P. Lenge,* with whom was *Mitchell W. Pearlman,* for the appellant-appellee (named defendant).

*John F. McKenna,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellees-appellants (named plaintiff et al.).

ARTHUR H. HEALEY, J. This case presents an important question of first impression in this state that concerns the extent to which documents in the possession of state agencies are subject to public disclosure under our Freedom of Information Act (General Statutes §§ 1-15, 1-18a, 1-19–1-19b, 1-21, 1-21a, 1-21c–1-21k). In February of 1975, Kenneth G. Wilson, vice president for academic affairs at the University of Connecticut, appointed seven people to serve on a committee he had established and denominated the program review committee

(hereinafter the PRC). The PRC was composed of the deans of the graduate school of engineering and the college of arts and sciences and four faculty members, one of whom was a member of the executive committee of the university senate and another who was a member of the university's budget committee. The function of the PRC was to review the operations of the various academic departments of the university and to make recommendations to Wilson aimed at improving efficiency in those departments. The recommendations, which took the form of periodic memoranda directed to Wilson, included changes in the existing administrative structure and programs within the university.

On September 14, 1976, William Finch, chairman of the federation of students and service organizations, which is the university's student government, directed a letter to Wilson seeking access to the documents received by him from the PRC. Wilson refused to permit the examination of these documents and Finch appealed that decision to the freedom of information commission (hereinafter the commission) pursuant to General Statutes § 1-21i (b). The commission, which never examined the documents, concluded that they were records subject to disclosure under § 1-19 of the Freedom of Information Act and ordered Wilson to provide Finch with access to them. Wilson, the university, and the state of Connecticut appealed the commission's decision to the Court of Common Pleas.[1] See General Statutes § 1-21i (d).

---

[1] On July 1, 1978, the jurisdiction of the Court of Common Pleas was transferred to the Superior Court. General Statutes § 51-164s.

The university claimed that the PRC documents were not public records; that if they were public records, they were exempt from the act's disclosure provision because they were (1) preliminary drafts or notes it is in the public's interest not to disclose; (2) files similar to personnel or medical files, the disclosure of which would constitute an invasion of personal privacy; and (3) records, reports or statements of strategy or negotiations with respect to collective bargaining. See footnote 4, infra. The trial court concluded that the PRC documents were not preliminary drafts or notes exempt from disclosure under General Statutes § 1-19 (b) (1) but that there was evidence that these documents contained information similar to personnel or medical files, the disclosure of which would constitute an invasion of personal privacy, and that some of the documents contained records, reports or statements of strategy or negotiations with respect to collective bargaining. Accordingly, the trial court remanded the case to the commission with direction to conduct a hearing and to examine the PRC documents so as to determine which portions of them are not subject to disclosure under the above exemptions.

The commission has appealed and the university has cross appealed. The university claims that the court erred in concluding that the PRC documents are not exempt from disclosure as being preliminary drafts or notes. The commission claims that the trial court erroneously concluded that portions of the PRC documents are exempt from disclosure under the "similar file" and the "collective bargaining" exceptions to the act's disclosure mandate. The commission also claims that the court exceeded its authority by remanding the case to it with direction for further proceedings.

The Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records. Representative Martin B. Burke, who sponsored the bill, commented on the floor of the house: "The legislature finds and declares that . . . the people do not yield their sovereignty to the agencies which serve them. That the people in delegating authority do not give their public servants the right to decide what is good for them to know and that it is the intent of this law that actions taken by public agencies be taken openly and their deliberations be conducted openly and that the records of all public agencies be open to the public except in those instances where superior public interest requires confidentiality." 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3911; see also the remarks of Senator Robert L. Julianelle then cochairman of the Government Administration and Policy Committee, 18 S. Proc., Pt. 5, 1975 Sess., pp. 2323–24.

As the remarks of Representative Burke indicate, however, the act does not confer upon the public an absolute right to all government information. Its careful delineation of the circumstances in which public meetings may be held in executive session; General Statutes § 1-18a (e); and in which agency records, or preliminary drafts or notes of such records, may properly remain undisclosed; General Statutes § 1-19 (b); reflects a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. Contrary to the suggestion of the commission,[2] it is this balance of the

---

[2] The commission argues in its brief that the trial court acted beyond the scope of the F.I.A. by applying the balancing test set out above in the interpretation of an exemption under the act.

governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the Freedom of Information Act. The general rule, under the act, however, is disclosure. General Statutes § 1-19. Exceptions to that rule will be narrowly construed in light of the underlying purpose of the act; cf. *Mazzola* v. *Southern New England Telephone Co.*, 169 Conn. 344, 355, 363 A.2d 170 (1975); *Church of Scientology of California* v. *United States Department of the Army*, 611 F.2d 738, 742 (9th Cir. 1979); and the burden of proving the applicability of an exemption rests upon the agency claiming it.

Subsection (a) of § 1-19 of the General Statutes contains the broad public right to inspect or copy agency records.[3] Subsection (b) (1) of § 1-19[4]

Although the commission correctly points out that nowhere does the act set out such a balancing test, it is apparent from the act's provisions and its legislative history that such an approach to the interpretation and application of the act is not only permissible, it is appropriate.

[3] General Statutes § 1-19 (a) provides: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect or copy such records at such reasonable time as may be determined by the custodian thereof. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of any political subdivision or the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy or such other person designated or empowered by law to so act, of such agency shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

[4] General Statutes § 1-19 (b) provides: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of (1) preliminary drafts or notes

exempts from the purview of that right the following documents: "[P]reliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." Both the commission and the trial court concluded that the PRC documents were not "preliminary

provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure; (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy; (3) records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known, (B) information to be used in a prospective law enforcement action if prejudicial to such action, (C) investigatory techniques not otherwise known to the general public, or (D) arrest records of a juvenile, which shall also include any investigatory files, concerning the arrest of such juvenile, compiled for law enforcement purposes; (4) records pertaining to strategy and negotiations with respect to pending claims and litigation to which the public agency is a party until such litigation or claim · has been finally adjudicated or otherwise settled; (5) trade secrets, which for purposes of sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, are defined as unpatented, secret, commercially valuable plans, appliances, formulas, or processes, which are used for the making, preparing, compounding, treating or processing of articles or materials which are trade commodities obtained from a person and which are recognized by law as confidential, and commercial or financial information given in confidence, not required by law and obtained from the public; (6) test questions, scoring keys and other examination data used to administer a licensing examination, examination for employment or academic examinations; (7) the contents of real estate appraisals, engineering or feasibility estimates and evaluations made for or by an agency relative to the acquisition of property or to prospective public supply and construction contracts, until such time as all of the property has been acquired or all proceedings or transactions have been terminated or abandoned, provided the law of eminent domain shall not be affected by this provision; (8) statements of personal worth or personal financial data required by a licensing agency and filed by an applicant with such licensing agency to establish his personal qualification for the license, certificate or permit

drafts or notes."[5] They based this conclusion on the fact that the "documents in question are final drafts as far as the PRC is concerned, not subject to alteration"; they are "separate, distinct and completed documents in and of themselves." This analysis misses the mark and is inconsistent with the object of the exemption.

Although the legislative history on this portion of the act is not illuminating; see 18 H. R. Proc., Pt. 8, 1975 Sess., pp. 3901–13; 18 S. Proc., Pt. 5, 1975 Sess., pp. 2322–36; it is clear from the language of § 1-19 (b) that the exemption contemplates two types of agency documents: one that is "final" and another that is "preliminary."[6] The distinction between these two types of documents does not consist of the extent to which the person or persons from whom they originate expect to alter them. If that were the case, a research memorandum that an administrative official requests from an aide con-

applied for; (9) records, reports and statements of strategy or negotiations with respect to collective bargaining; (10) records, tax returns, reports and statements exempted by federal law or state statutes or communications privileged by the attorney-client relationship; (11) names or addresses of students enrolled in any public school or college without the consent of each student whose name or address is to be disclosed who is eighteen years of age or older and a parent or guardian of each such student who is younger than eighteen years of age."

[5] On appeal, no claim is made by the university that the PRC documents are not "public records or files" under § 1-18a (d) of the act, which provides: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, reserved or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

[6] This observation comports with the principle that words used in expressing legislative intent are to be given their commonly approved meaning, unless a contrary intent is clearly expressed. General Statutes § 1-1; *Holmquist* v. *Manson*, 168 Conn. 389, 393, 362 A.2d 971 (1975).

cerning a potential policy or staff change might be considered a "final document" subject to disclosure simply because the research aide does not intend to alter further the memorandum. It is clear that had the administrative officer prepared the memorandum himself but later decided to abandon the plan he studied, the memorandum would fall under the heading of "preliminary draft or notes." We do not think that the concept of preliminary, as opposed to final, should depend upon who generates the notes or drafts, or upon whether the actual documents are subject to further alteration. That the documents in question here were not subject to alteration, and hence were "final" vis-a-vis the PRC, is of little consequence if those documents do not have an operative and direct effect upon university policy or administration.

Instead, we believe that the term "preliminary drafts or notes" relates to advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated. See *N.L.R.B.* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975); *Exxon Corporation* v. *Federal Trade Commission*, 466 F. Sup. 1088, 1097 (D. D.C. 1978) (construing 5 U.S.C. § 552 [b] [5]); *Carl Zeiss Stiftung* v. *V.E.B. Carl Zeiss Jena*, 40 F.R.D. 318, 324 (D. D.C. 1966), affirmed, 384 F.2d 979, cert. denied, 389 U.S. 952, 88 S. Ct. 334, 19 L. Ed. 2d 361 (1967). Such notes are predecisional. They do not in and of themselves affect agency policy, structure or function. They do not require particular conduct or forbearance on the part of the public. Instead, preliminary drafts or notes reflect that aspect of the agency's function that pre-

cedes formal and informed decisionmaking. We believe that the legislature sought to protect the free and candid exchange of ideas, the uninhibited proposition and criticism of options that often precedes, and usually improves the quality of, governmental decisions. It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass.[7]

This interpretation of the disclosure exemption of General Statutes § 1-19 (b) (1) comports with similar law from other jurisdictions. Although our Freedom of Information Act does not derive from any model act or the federal Freedom of Information Act, other similar acts, because they are in pari materia, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved. See 2A Sutherland, Statutory Construction (4th Ed.) §§ 51.06, 52.03. The federal Freedom of Information Act requires the disclosure of, among other documents, "(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases; (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and (C) administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552 (a) (2). In 5 U.S.C. § 552 (b) (5) the act goes on to exempt from the disclosure requirements "inter-agency or intra-agency

---

[7] The present case involves documents transmitted from an entity which is not a public agency to a public agency. We do not suggest that, where a particular record embodies the final decision of a public agency and is therefore not within the ambit of the preliminary notes exemption, such a document becomes exempt by virtue of being used for predecisional purposes by some other public agency.

memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[8]  Addressing this exemption to the federal act and cases interpreting it, Professor Davis has written:  "The key to all the cases is that the fifth exemption protects the deliberative materials produced in the process of making agency decisions, but not factual materials, and not agency law."  1 Davis, Administrative Law Treatise (1978) § 5.33.[9]  In *N.L.R.B.* v. *Sears, Roebuck & Co.,* 421 U.S. 132, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) the United States Supreme Court concluded that exemption five in the federal act, "properly construed, calls for 'disclosure of all "opinions and interpretations" which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.' "  Id., 153, quoting Davis, "The Information Act:  A Preliminary Analysis," 34 U. Chi. L. Rev. 761, 797 (1967); see *McClelland* v. *Andrus,* 606 F.2d 1278, 1286–87 (D.C.

[8] Our Freedom of Information Act, before its amendment in 1975, contained a somewhat similar provision exempting from disclosure "inter-agency or intra-agency memoranda or letters dealing solely with matters of law or policy." See General Statutes § 1-19 (Rev. to 1975); Public Acts 1975, No. 75-342 § 2. The object of this and other such exemptions, although expressed in different language, is to strike that balance between the public's right to know and the government's need to function effectively.

[9] It has been said that exemption five of the federal act "resulted from the arguments of agency witnesses to committees of Congress that a full and frank exchange of opinion within agencies would be impossible if all internal communications were made public. . . . [T]hese witnesses contended, and with merit, that advice from staff assistants and the exchange of ideas among agency personnel would not be completely frank if they were forced to 'operate in a fish bowl.'" Annot., 7 A.L.R. Fed. 855, 861; see also House of Representatives Reports No. 1497, 89th Congress, 2d Session, 1966 U.S. Code Cong. & Admin. News 2418.

Cir. 1979); *Tabcor Sales Clearing, Inc.* v. *Department of Treasury,* 471 F. Sup. 436, 438 (N.D. Ill. 1979).

Moreover, the fact that the recommendational input derives from a person or body not charged with making the ultimate decision has been considered insignificant in determining whether the exemption from disclosure applies. See *Wu* v. *National Endowment for Humanities,* 460 F.2d 1030, 1032 (5th Cir. 1972); *Brinton* v. *United States Department of State,* 476 F. Sup. 535 (D. D.C. 1979); *Smith* v. *Flaherty,* 465 F. Sup. 815, 820–21 (M.D. Pa. 1978); *Martin Marietta Aluminum, Inc.* v. *Administrator, General Services Administration,* 444 F. Sup. 945, 949 (C.D. Cal. 1977); *Washington School District No. 6* v. *Superior Court,* 112 Ariz. 335, 541 P.2d 1137 (1975); *Bartlett* v. *Nassar,* 100 Misc. 2d 904, 420 N.Y.S.2d 265 (Sup. Ct. 1979). The Supreme Court made this point clear in *Renegotiation Board* v. *Grumman Aircraft Engineering Corporation,* 421 U.S. 168, 95 S. Ct. 1491, 44 L. Ed. 2d 57 (1975), where it applied exemption five to advisory memoranda presented to the Renegotiation Board by a regional board not responsible for making the ultimate decision in an adjudicative process. It once again made clear that the fifth exemption and the case law applying it "distinguish between predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not." Id., 184. It concluded that the advisory memoranda originating from the regional board, which lacks "decisional authority," were within the disclosure exemptions. See also *Tabcor Sales Clearing, Inc.*

v. *Department of Treasury,* 471 F. Sup. 436 (N.D. Ill. 1979) ; *Exxon Corporation* v. *F.T.C.,* 466 F. Sup. 1088 (D. D.C. 1978).

Thus, the analysis employed by the federal courts in construing exemption five of the federal act is a temporal one:  It distinguishes between pre-decisional, decisional, and postdecisional documents relating to agency law, policy, or procedure. Although exemption five in the federal act does not employ the same language as that appearing in our act's parallel exemption, the temporal measurement of documents, by the use of the term "preliminary" and the implicit reference to the term "final," in our statute suggests that the same analysis reflected in the federal decisions construing exemption five is appropriate in construing our statute's similar exemption.

Under New York's Freedom of Information law the same result would also obtain.  Drawing on federal case law on the subject, the court in *Miracle Mile Assn.* v. *Yudelson,* 68 App. Div. 2d 176, 182, 417 N.Y.S.2d 142 (1979) said:  "[A]n agency may refuse to produce material integral to the agency's deliberative process and which contains opinions, advice, evaluations, deliberations, policy formulations, proposals, conclusions, recommendations or other subject matter."[10]  See also *Dunlea* v. *Goldmark,* 54 App. Div. 2d 446, 448, 389 N.Y.S.2d 423 (1976), aff'd, 43 N.Y.2d 754, 372 N.E.2d 798 (1977) (on the opinion of the Appellate Division).

These decisions recognize a legislative determination, implicit in the type of exemptions from dis-

---

[10] New York's Freedom of Information Act has an exemption from disclosure similar to exemption five of the federal act.  See N.Y. Public Officers Law § 87 (2) (g) (McKinney 1952).

closure typically created, that good government requires in the predecisional stage uninhibited communication and exchange of opinions, ideas, and points of view. See *Mead Data Central, Inc.* v. *United States Department of Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977). Disclosure of documents containing such communication would be "injurious to the consultative functions of government." See *Kaiser Aluminum & Chemical Corporation* v. *United States,* 157 F. Sup. 939, 946 (Ct. Cl. 1958), quoted in *Environmental Protection Agency* v. *Mink,* 410 U.S. 73, 87, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973).

It was this very communication that Wilson sought and obtained from the PRC. Wilson assured the members of the committee that their communications would remain strictly confidential.[11] This he was entitled to do under the circumstances of this case. The PRC was a wholly advisory committee. It had no statutory or university delegated authority. Its members served at the pleasure of Wilson and its function was determined by Wilson. In a sense, the PRC was a "research aide" to vice president Wilson. See *Sanders* v. *Benton,* 579 P.2d 815, 819–20 (Okla. 1978) (open meetings law); cf. *Greene* v. *Athletic Council of Iowa State University,* 251 N.W.2d 559, 561 (Iowa 1977) (open meetings law).[12] It is significant, moreover, that because the

[11] No one has raised, and we therefore do not consider, any constitutional right of privacy that may be asserted by members of the PRC as a result of Wilson's assurance of confidentiality.

[12] There is no suggestion in this case that, although the PRC had no actual authority, it possessed de facto decisionmaking authority. See *Sanders* v. *Benton,* 579 P.2d 815, 818–20 (Okla. 1978); cf. *Town of Palm Beach* v. *Gradison,* 296 So. 2d 473 (Fla. 1974).

PRC does not constitute an "agency" under the act,[13] its meetings would not be open to the public under § 1-21 of the act. Although this fact is by no means dispositive of the applicability of the preliminary drafts exemption, it does reinforce our interpretation of the exemption. See note, "The Definition of 'Agency Records' Under the Freedom of Information Act," 31 Stan. L. Rev. 1093, 1111–13 (1979). It would be difficult to understand why the legislature would not recognize the public's right to be present at the meeting of such an advisory body yet recognize a public right to inspect the documents containing the recommendations and ideas generated at that meeting. See *Pope* v. *Parkinson,* 48 Ill. App. 3d 797, 800–801, 363 N.E.2d 438 (1977) (university advisory committee); *McLarty* v. *Board of Regents of University System of Georgia,* 231 Ga. 22, 23, 200 S.E.2d 117 (1973) (university advisory committee); *Washington School District No. 6* v. *Superior Court,* 112 Ariz. 335, 337–38, 541 P.2d 1137 (1975) (advisory committee established for benefit of board of trustees of school district).

Determining that the documents in question constitute preliminary drafts and notes under the act is not enough, however. The statute further requires the public agency to determine "that the public interest in withholding such documents clearly outweighs the public interest in disclosure."

---

[13] A "public agency" or "agency" is defined under the act as "any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, and also includes any judicial office, official or body but only in respect to its or their administrative functions." General Statutes § 1-18a (a).

General Statutes § 1-19 (b). Although the statute places the responsibility for making that determination on the public agency involved, the statute's language strongly suggests that the agency may not abuse its discretion in making the decision to withhold disclosure. The agency must, therefore, indicate the reasons for its determination to withhold disclosure and those reasons must not be frivolous or patently unfounded. Here, the university determined that disclosure of the documents would inhibit the PRC's candid advisory input and violate Wilson's promise of confidentiality; might embarrass members of the faculty and administration whose performance was criticized therein; and might cause "needless panic" in the university community because of the recommendations for wide scale revisions of departmental structures contained in them. These reasons are sufficient under the circumstances of this case to satisfy the requirement of General Statutes § 1-19 (b) (1).[14]

We direct our attention briefly to the trial court's concern over the fact that the documents in question were never examined by the commission or presented to the court. Where the nature of the documents, and, hence, the applicability of an exemption, is in dispute it is not only within the commission's power to examine the documents themselves,

---

[14] We point out that Finch did not claim and the commission did not find that these documents contain factual data that may be disentwined from exempt information. Such data is ordinarily subject to disclosure under freedom of information acts. *Environmental Protection Agency* v. *Mink*, 410 U.S. 73, 87, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973); *McClelland* v. *Andrus*, 606 F.2d 1278, 1287–88 (D.C. Cir. 1979); *Exxon Corporation* v. *F.T.C.*, 466 F. Sup. 1088 (D.C. 1978); *Dunlea* v. *Goldmark*, 54 App. Div. 2d 446, 448–49, 389 N.Y.S.2d 423 (1976), aff'd, 43 N.Y.2d 754, 372 N.E.2d 798 (1977).

it is contemplated by the act that the commission do so. General Statutes § 1-21j (d) provides in part: "Said commission shall have the power to investigate all alleged violations of [the act] and may for the purpose of investigating any violation hold a hearing, administer oaths, examine witnesses, receive oral and documentary evidence, have the power to subpoena witnesses under procedural rules adopted by the commission to compel attendance and *to require the production for examination of any books and papers which the commission deems relevant in any matter under investigation or in question.*" (Emphasis added.) The commission may seek enforcement of orders made under this subsection by application to the Superior Court. Ibid. This provision anticipates that the commission will play a central role in resolving disputes administratively under the act. To fulfill this role effectively, the commission's determinations must be informed. It should not accept an agency's generalized and unsupported allegations relating to documents claimed to be exempt from disclosure. See *Church of Scientology of California* v. *United States Department of the Army,* 611 F.2d 738, 742 (9th Cir. 1979). Unless the character of the documents in question is conceded by the parties, an in camera inspection of the particular documents by the commission may be essential to the proper resolution of a dispute under the act. Where such an inspection would be burdensome on the commission; see *Environmental Protection Agency* v. *Mink,* 410 U.S. 73, 92–93, 93 S. Ct. 827, 35 L. Ed. 2d 119 (1973); or ineffective because of the absence of the adversarial process; see *Vaughn* v. *Rosen,* 484 F.2d 820, 825 (D.C. Cir. 1973); other methods for ascertaining the character of the documents may be employed

by the parties and the commission. The agency representative may testify concerning the content and use of the documents, or supply affidavits to the commission relating to their content and use. Any such testimony or affidavits must not be couched in conclusory language or generalized allegations, however, but should be sufficiently detailed, without compromising the asserted right to confidentiality, to present the commission with an informed factual basis for its decision in review under the act. See id., 826–27; *Mead Data Central, Inc.* v. *United States Department of Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977); *Booth Newspapers, Inc.* v. *Regents of University of Michigan,* 93 Mich. App. 100, 111-12, 286 N.W.2d 55 (1979). No matter what method is utilized before the commission, however, one thing is clear: It is the agency that bears the burden of proving the applicability of an exemption, and therefore, the nature of the documents in question. See *Church of Scientology of California* v. *United States Department of the Army,* supra, 742.

In light of our disposition of this case, the commission's examination of the PRC documents is not necessary. This is so because the record discloses that Wilson testified before the commission concerning their contents in sufficient detail and neither the commission nor Finch questions the advisory and predecisional nature of those documents.

In concluding,[15] we note the commission's argument that the trial court exceeded its authority under General Statutes § 4-183 (b) when it reviewed the commission's determination that none of the

[15] Our decision on the plaintiff's appeal is dispositive of the commission's appeal, and therefore, makes it unnecessary for us to consider the claims raised therein.

statutory exemptions was applicable in this case. The commission claims in its brief that it was not within the province of the trial court to determine whether the statutory exemptions were applicable and that the court was limited only to a determination of whether the commission's findings and conclusions were "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (g) (5). This argument cannot be substantiated. Judicial review of the commission's action is conducted pursuant to § 4-183 (b) of the Uniform Administrative Procedure Act.[16] See General Statutes § 1-21i (d). Subsection (g) of § 4-183 authorizes the court to reverse or modify the decision of the commission for five reasons in addition to that stated by the commission. Indeed, the basis of the trial court's action, and our own for that matter, is a conclusion that the decision of the commission was affected by an "error of law," one of the grounds for reversal or modification enumerated in § 4-183 (g). What we said in *Real Estate Listing Service, Inc.* v. *Connecticut Real Estate Commission,* 179 Conn. 128, 138-39, 425 A.2d 581 (1979), bears repeating here: "Although the factual and discretionary determinations of administrative agencies are to be given con-

---

[16] General Statutes § 4-183 (g) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

siderable weight by the courts; see General Statutes § 4-183 (g); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.*, 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk*, 167 Conn. 151, 355 A.2d 25 (1974); 2 Am. Jur. 2d, Administrative Law §§ 645, 675; it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. *N.L.R.B.* v. *Brown*, 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.*, 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom., *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers*, 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); 73 C.J.S., Public Administrative Bodies and Procedure § 69."

There is error, the judgment is set aside and the case is remanded to the trial court with direction to sustain the university's appeal and to reverse the decision of the freedom of information commission.

In this opinion the other judges concurred.