T. W. Phillips Gas and Oil Company, Allegheny Ludlum Steel Corporation and The Borough of West Leechburg, Appellants *v.* The Peoples Natural Gas Company, Appellee.

378

Argued March 12, 1985, before Judges CRAIG and DOYLE and Senior Judge KALISH, sitting as a panel of three.

*H. Woodruff Turner,* with him, *John Winship Read* and *Walter A. Bunt, Jr., Kirkpatrick & Lockhart,* for appellant, T. W. Phillips Gas and Oil Company and Allegheny Ludlum Steel Corporation.

*Joseph W. Ceraso,* for appellant, The Borough of West Leechburg.

*Dennis J. Lewis,* with him, *George E. Yokitis,* for appellee, The Peoples Natural Gas Company.

*Kandace F. Mellilo,* for intervenor, Pennsylvania Public Utility Commission.

OPINION BY JUDGE CRAIG, May 21, 1985:

T. W. Phillips Gas and Oil Company, Allegheny Ludlum Steel Corporation and the Borough of West Leechburg appeal an order of the Court of Common Pleas of Westmoreland County enjoining them from further activities in connection with the construction of a pipeline via public rights-of-way in the Borough of West Leechburg for the transmission of natural gas supplied by Phillips from its main line in Allegheny Township to Allegheny Ludlum's steel plant in the Borough of West Leechburg.

We must determine whether the Court of Common Pleas of Westmoreland County had jurisdiction to address the preliminary injunction and, if so, whether Judge SCHERER, as chancellor, properly granted the injunction.

In May, 1984, Allegheny Ludlum contracted with Phillips to supply gas to its West Leechburg steel plant as a cost-saving measure. At that time, Peoples

Natural Gas Company, the appellee, was supplying gas to the plant at higher rates than those agreed to by Phillips. Allegheny Ludlum obtained an excavating permit from the Borough of West Leechburg and began to construct a pipeline from Phillips' transmission line in adjacent Allegheny Township to the plant in West Leechburg.

In August, 1984, Peoples filed a complaint and request for an interim order with the Public Utility Commission (PUC) alleging that Phillips had no charter to provide gas to the West Leechburg plant, and that Phillips' proposed extension of service was therefore in violation of sections 1101 and 1102 of the Public Utility Code.[1] The complaint also alleged that Allegheny Ludlum and the Borough of West Leechburg had conspired with Phillips to extend the unauthorized service into the borough to circumvent the PUC's jurisdiction.

In September, 1984, Peoples filed a complaint in equity in the Court of Common Pleas of Westmoreland County, setting forth essentially those same allegations. The defendants filed preliminary objections challenging the court's subject matter jurisdiction, claiming that primary and exclusive jurisdiction rested with the PUC. The trial court entered an order dismissing those preliminary objections.

Upon motion of Peoples, Judge SCHERER entered an order preliminarily enjoining the defendants as follows: (1) enjoining Phillips from supplying gas to Allegheny Ludlum's West Leechburg plant until the PUC's adjudication is complete; (2) enjoining Allegheny Ludlum from further construction of the pipeline; (3) enjoining the Borough of West Leechburg from granting permission to Allegheny Ludlum to make use of public rights of way.

---

[1] 66 Pa. C. S. §§101-3315, *as amended.*

*Jurisdiction*

The appellants argue that this matter is within the primary and exclusive subject matter jurisdiction of the PUC, and that, therefore, the court of common pleas did not have jurisdiction to grant injunctive relief.[2]

Sections 1504 and 1505 of the Public Utility Code, 66 Pa. C. S. §§1504 and 1505, charge the PUC with responsibility for prescribing rules and regulations governing reasonableness, adequacy and sufficiency of service, and the courts have interpreted those sections as vesting in the PUC exclusive jurisdiction over those matters. *Behrend v. Bell Telephone Co. of Pennsylvania,* 431 Pa. 63, 243 A.2d 346 (1968). Of course, the PUC does not have jurisdiction over private contractual disputes between citizens and utilities, *Byer v. Peoples Natural Gas Co.,* 251 Pa. Superior Ct. 75, 380 A.2d 383 (1977), and does not have the authority to award damages in negligence or contract actions. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). In such cases, an administrative remedy would therefore be inadequate, and the complaining party is not required to exhaust administrative procedures before resorting to the courts. *Feingold,* 477 Pa. at 10-12, 383 A.2d at 795-96.

In determining where jurisdiction properly lies, we must look beyond the form of the action and the manner in which it is titled to the essence of the underlying claims. *DeFrancesco v. Western Pennsylvania Water Co.,* 499 Pa. 374, 453 A.2d 595 (1982). As Judge SCHERER accurately perceived, this dispute centers on

---

[2] Because Appellants frame their attack as challenging the court's subject matter jurisdiction, which can be raised at any time, *Department of Transportation, Bureau of Traffic Safety v. Ehret,* 46 Pa. Commonwealth Ct. 131, 405 A.2d 1355 (1979), we must consider their argument, notwithstanding People's assertion that the appropriate inquiry is which forum has primary jurisdiction.

the respective service territorial rights of Phillips and Peoples. As such, the central substantive issues are clearly within the exclusive original jurisdiction of the PUC.

However, the common pleas court did not fully address the substantive issues as such, but simply issued an injunction to maintain the status quo pending the PUC's adjudication of the rights of the two public utilities here involved. Therefore, the common pleas court action did not usurp the PUC's jurisdiction, nor in any way interfere with it;[3] on the contrary, the court acted in an ancillary role to preserve the status quo until the PUC could exercise its jurisdiction over the matter.

In *Fogelsville and Trexlertown Electric Co. v. Penn Power and Light Co.*, 271 Pa. 237, 114 A. 822 (1921), an electric company filed a complaint in equity seeking an injunction against another company's allegedly unauthorized construction of transmission lines and provision of service to an area which the moving party claimed was its exclusive territory. The Supreme Court determined that the Public Service Commission (forerunner to the PUC) had jurisdiction to decide the substantive issues, but upheld the common pleas court grant of injunctive relief, stating:

> [T]he authority of the court may be used in aid of the commission, sustaining its hand; and for this purpose, equitable relief may be invoked to preserve the status quo, giving reasonable time to file a complaint and for the commission to hear and determine it. Adequate power exists in the commission by the act to bring offending companies to summary control, . . . but for the present we will make such orders as will preserve the rights of all parties.

*Id.* at 244, 114 A. at 825.

---

[3] In fact, the PUC has intervened in this appeal arguing in favor of the common pleas court issuance of the injunction.

Further, the order in this case enjoined not only Phillips, but also Allegheny Ludlum and the Borough of West Leechburg from activities in furtherance of the planned construction and piping of natural gas across the borough to Allegheny Ludlum's property. Because the PUC's regulatory powers extend only to utilities covered by the Public Utility Code, *Springdale Township v. Allegheny County Board of Property Assessment, Appeal and Review,* 78 Pa. 100, 467 A.2d 74 (1983), an administrative order could not bind Allegheny Ludlum or the borough, and would therefore be an inadequate remedy. Only the equitable powers of the common pleas court could afford the injunctive relief requested in Peoples' complaint.

### Preliminary Injunction

A court may grant a preliminary injunction only where the moving party establishes the following familiar elements: (1) the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) greater injury will occur from refusing the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) the plaintiff's right to relief is clear. *Adler v. Township of Bristol,* 83 Pa. Commonwealth Ct. 72, 475 A.2d 1361 (1984).

Our review of the court of common pleas order granting the preliminary injunction is limited to a determination of whether the record contains apparently reasonable grounds to justify the chancellor's action. *Willman v. Children's Hospital of Pittsburgh,* 505 Pa. 263, 479 A.2d 452 (1984). "Only if it is claimed that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or mis-

applied will we interfere with the decision of the chancellor." *Roberts v. Board of Directors of School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975).

The appellants focus their challenge to the grant of the injunction on two grounds—the plaintiff's lack of a clear right to relief, and the absence of immediate and irreparable harm that cannot be compensated in damages.

Initially, we note that the "clear right to relief" element does not impose upon the proponent of the preliminary injunction the burden of establishing an absolute right to relief on the underlying claim. *Pennsylvania Interscholastic Athletic Association v. Geisinger,* 81 Pa. Commonwealth Ct. 421, 474 A.2d 62 (1984). In *Fischer v. Department of Public Welfare,* 497 Pa. 267, 439 A.2d 1172 (1982), the Supreme Court illustrated the "clear right" requirement as follows:

> Where the threat of immediate and irreparable harm to the petitioning party is evident, that the injunction does no more than restore the status quo and the greater injury would result by refusing the requested injunction than granting it, an injunction may properly be granted where substantial legal questions must be resolved to determine the rights of the respective parties.

*Id.* at 271, 439 A.2d at 1174. After identifying, but not resolving, the issues raised on the merits of the underlying claim in *Fischer,* the Supreme Court again referred to the substantiality of the questions raised as determinative.

> These contentions raise important questions that are deserving of serious consideration and resolution. In view of the seriousness of the questions to be decided and the real threat of immediate and irreparable harm to the appellees, there was, without question, reasonable

grounds for the entry of the preliminary injunction preserving the status quo until the Commonwealth Court decided the merits of the issue raised.

*Id.* at 272, 439 A.2d at 1175.

According to the Supreme Court's formulation of the "clear right" requirement in *Fischer,* if the other elements of a preliminary injunction are present, and the underlying claim raises important legal questions, the plaintiff's right to relief is clear. Therefore, the "clear right to relief" element does not require the chancellor to determine the merits of the controversy at the preliminary injunction stage; rather, the chancellor need only determine, in addition to the other criteria, that the claim raises substantial legal questions.

Clearly, the questions of service territory rights raised on this underlying claim are substantial and deserve serious consideration by the PUC. Therefore, if all other criteria of a preliminary injunction are met, we must conclude that Peoples' had a clear right to relief.

Of those additional criteria, the appellants principally challenge the chancellor's findings and conclusion of immediate and irreparable harm, arguing that any harm inflicted on Peoples is compensable in money damages.

Peoples presented evidence that Phillips' plan to provide gas to Allegheny Ludlum would result in lost gas sales of $2.5 million annually. Consequently, Peoples would have to restructure its rates to spread those additional costs among its ratepayers. Peoples testified that the administrative and legal costs involved in restructuring their rates would be difficult to estimate, making the final monetary impact of the Phillips' plan impossible to calculate. Of course, if the PUC should ultimately decide that Peoples, rather

than Phillips, has exclusive territory rights, but pending that determination Phillips was permitted to provide gas to Allegheny Ludlum, Peoples would again have to restructure its rates to reflect the increased sales and decreased costs. Accordingly, Judge SCHERER's finding that the "exact loss to each Peoples ratepayer is incapable of exact and precise calculation" is supported in the record.

Peoples also presented evidence that the Phillips' plan would displace up to one billion cubic feet of natural gas, thereby reducing Peoples' demand from various independent producers supplying gas to Peoples, resulting in an inestimable cost to those suppliers. The following finding of fact is therefore also supported in the record:

> The displacement of Peoples' sales to the plant would result in the loss of 500,000,000 to 1,000,-000,000 cubic feet of natural gas service and would thereby cause curtailment of production of comparable volumes from wells currently owned by Peoples as well as wells owned by independent producers under contract with Peoples to provide gas to Peoples. The loss to the various independent gas producers would vary from well to well and would be impossible to adequately and precisely calculate.

In *Philadelphia Ball Club v. Lajoie*, 202 Pa. 210, 216, 51 A. 973, 974 (1902), where a baseball player was enjoined from breaching his contract to play with a particular club by playing with another club during the term of the contract, the Supreme Court held that where "no certain pecuniary standard exists for the measurement of damages," the threatened harm is irreparable. *See also Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 189 A.2d 180 (1963) (where it would be difficult, if not impossible, to ascertain damages which

would result from employee passing along secret formulas to competing company, irreparable harm is present). Therefore, based on those findings, Judge SCHERER properly concluded that refusing the injunction would result in immediate and irreparable harm.[4]

In their reply brief,[5] the appellants raise additional challenges to Judge SCHERER's conclusions regarding the other criteria for issuance of the injunction. They attack the conclusion that greater injury will result from refusing the injunction than granting it, pointing to evidence that Phillips would save $500,000 to $1,-000,000 annually, and arguing that any loss to Peoples would be less than that. However, as noted, substantial evidence supports Judge SCHERER's findings that the potential losses are incalculable, thereby making the Phillips formulation untenable.

Appellants' further contention, that the injunction is not reasonably suited to abate the alleged wrong, is unpersuasive. Our affirmance of the common pleas grant of the injunction reflects our complete agreement with the appellants that the PUC, rather than the common pleas court, is the appropriate forum for resolution of the complex issues presented in the underlying claim. However, contrary to appellants' argument, the injunctive remedy is particularly suited, indeed necessary, to preserve those issues for the adjudication of the PUC.

---

[4] Our conclusion, that the potential harm to Peoples, its ratepayers and suppliers is irreparable, makes it unnecessary for us to consider, as the trial court did, whether Phillips' extension of service is in violation of sections 1101 and 1102 of the Public Utility Code, and therefore constitutes irreparable harm per se. *Commonwealth v. Coward*, 489 Pa. 327, 414 A.2d 91 (1980). That is the pivotal issue on the underlying claim, and is for the PUC to determine.

[5] By order dated March 11, 1985, Commonwealth Court granted leave to appellants to file a reply brief, and granted leave to Peoples to file a brief in reply thereto.

388

Having carefully reviewed the record, we conclude that Judge SCHERER's findings are supported by the record, and that reasonable grounds justify his grant of the injunction.

Accordingly, we affirm.

ORDER

Now, May 21, 1985, the order of the Court of Common Pleas of Westmoreland County, Civil Division, at No. 6229 of 1984, dated November 19, 1984, is affirmed.