The PATRIOT–NEWS COMPANY and Thomas Baden

v.

The EMPOWERMENT TEAM OF THE HARRISBURG SCHOOL DISTRICT MEMBERS Consisting of Lucien Yates, III; Brenda Conner; Wanda R.D. Williams; Rich Askey; Evelyn Antonsen; Elena Romero Morgan; Merry–Grace Majors; John Weldon Scott; Emily J. Leader; Anne E. Russo; Susan C. Wilson, Appellants.

The Patriot–News Company and Thomas Baden

v.

The Empowerment Team Of The Steelton–Highspire School District Members Consisting of Kenneth Kitch, Nick Govelovich, Faye Ranegar, Earl Bright, James W. Martin, Brenda Hoerner, Deborah Kelley, Lorraine Basonic, Cindy Kable, Christyna Muza and David Crawford, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2000.

Decided Dec. 4, 2000.

Ronald M. Katzman, Harrisburg, for appellants.

Craig J. Staudenmaier, Harrisburg, for appellees.

Before DOYLE, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY, and FLAHERTY, Judges.

DOYLE, President Judge.

The Empowerment Team of the Steelton–Highspire School District and the Empowerment Team of the Harrisburg School District (Appellants), each appeal from one of two orders of the Court of Common Pleas of Dauphin County, which, *inter alia*, directed that Appellants must conduct all of their future meetings open to public view pursuant to the mandate of Pennsylvania's Sunshine Act (Act), 65 Pa. C.S. §§ 701–716.

On September 22, 2000, the Patriot–News Company and Thomas Baden, its managing editor (Appellees), filed a complaint in equity and a motion for preliminary injunction seeking a judicial declaration that the meetings of the Steelton–Highspire School District's empowerment team must be open to the public. Appellees contended in their complaint that "the authority vested in the Empowerment Team, including but not limited to the power to supercede prior determinations of the District's Directors and Administrators, requires that the Empowerment Team be determined to be an 'agency' under the Sunshine Act.... " (Complaint, pp. 6–7.) Appellees further contended in their motion for a preliminary injunction that Appellants had been meeting for more than forty days and had less than eighty

days remaining in which to meet. Common Pleas entered an *ex parte* injunction that same day (September 22, 2000) and directed that the parties file briefs no later than September 25, 2000. Appellants thereafter filed a motion to dissolve the injunction and both parties filed briefs. Common Pleas then held a hearing on September 26th and, on September 27th, issued its order, *inter alia*, continuing and modifying the *ex parte* injunction that it had issued on September 22nd; requiring Appellees to file a five-thousand-dollar ($5,000.00) injunction bond; directing that the Steelton–Highspire Empowerment Team conduct all of its future meetings open to public view; and ordering the team to make available to any interested person all of its past and future meeting minutes.[1]

Likewise, on September 28, 2000, Appellees filed a complaint and a motion for preliminary injunction seeking to have the meetings of the Harrisburg School District's Empowerment Team made open to the public. In their complaint, Appellees maintained that the Harrisburg School District Empowerment Team was an agency under the Sunshine Act, and in their preliminary injunction motion, they also stated that the team had already begun meeting and had only one-hundred and twenty days in which to complete its tasks. That same day, Common Pleas ordered the parties to file briefs by September 29, 2000 and scheduled a hearing on Appellees' motion for preliminary injunction on October 2, 2000. The parties then filed their briefs, and Appellants also filed a motion to dismiss the complaint. After the October 2, 2000 hearing, Common Pleas issued a preliminary injunction and ordered that the Harrisburg School District Empowerment Team conduct all of its meetings in public view; that Appellees

---

1. According to the record, the first meeting of the Steelton–Highspire Empowerment Team took place on August 14, 2000, and the team met four times after that date prior to the hearing in Common Pleas on September 26, 2000. (Notes of Testimony, (N.T.), Testimony of Dr. Kenneth R. Kitch, School District Superintendent, Hearing of September 26, 2000, p. 21; *see also* Reproduced Record, (R.R.), p. 60a.)

had to file a five-thousand-dollar ($5,000.00) injunction bond; and that the team make available to any interested person all of its past and future meeting minutes.[2]

On September 28, 2000, the Steelton–Highspire Empowerment Team filed with this Court an emergency application for relief requesting an expedited appeal process due to certain time constraints of the team in performing its function. On October 4, 2000, the Harrisburg School District Empowerment Team also filed an emergency application requesting an expedited appeal due to similar time constraints. On October 6, 2000, this Court granted both applications, and we scheduled an expedited argument before the Court *en banc* on November 1, 2000. On October 11, 2000, we entered an order consolidating the two matters for argument and disposition.

This matter has arisen because of the history of low performance scores of students in both the Steelton–Highspire School District and the Harrisburg School District. Due to the poor test performances of children enrolled in these districts, both school districts were placed on an "Education Empowerment List" pursuant to Article XVII B of the Education Empowerment Act, Act 16 of 2000 (Act 16), which was recently signed into law by Governor Tom Ridge on May 10, 2000.[3] Section 1703–B(D)(1) of Act 16 provides that, no later than thirty days after a school district has been placed on the education empowerment list, the school district shall establish a school district empowerment team to work with an academic advisory team to develop a "school district improvement plan." According to Section 1703–B(D)(2), the empowerment team is to be comprised of eleven persons, five of whom are professionally affiliated with the school district, as follows:

(I) One (1) member of the board of school directors who may be the president or a designated member of the board.

(II) The superintendent of the school district.

(III) The school business manager or the individual responsible for the fiscal management of the school district.

(IV) A principal from a district school selected by all principals in the district.

(V) A teacher from a district school selected by all teachers in the district.

(VI) Two (2) parents of students from district schools, at least one of whom has a child in a district school identified under subsection (B).

(VII) A local representative of business.

(VIII) A local community leader.

(IX) Two (2) members of the general public, which may include local law enforcement, social service providers or health care providers serving the school district.

Although Act 16 does not specifically state who is to select the last six members of the team, who are not required to participate by virtue of their professional positions, this Court would have to assume that the school board appoints these members of the team after volunteers have been solicited.[4] Section 1703–B(C)(2) provides that

---

**2.** The Harrisburg Empowerment Team met for the first time as a group on or about August 31, 2000 and had approximately four or five meetings at the time of the hearing in Common Pleas. (N.T., Testimony of Dr. Lucien Yates, III, School District Superintendent, Hearing of October 2, 2000, pp. 8, 10; *see also* R.R., pp. 144a, 146a.)

**3.** Act 16 further amends the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

**4.** We note that, while Section 1703–B(D)(3) provides that the School Board "**shall establish procedures** for selecting the parents, the business and community leaders and members of the general public[,]" (emphasis added), and that these procedures "shall ensure public awareness" and community input, the Act does not specifically provide that the school board **itself** makes these selections. Nevertheless, at the hearing involving the Steelton–Highspire team, the school district superintendent testified that "[w]e decided to advertise and to solicit people to join the

the academic advisory team is to consist of no less than three and no more than six members, all of whom are experts selected by the Department of Education (Department), although the team may not be entirely composed of Department staff.

Section 1702–B defines a "school district improvement plan" as "a plan to improve the level of student performance and the management and operation of a school district transmitted to the Department by the Board of School Directors...." Section 1703–B(E) provides that this improvement plan is to give priority to improvement of schools in the school district with low test performance and is to set forth specific methods and goals for improving the educational performance of the schools and school district.[5]

Pursuant to Section 1703–B(G), the school board shall transmit the final improvement plan to the Department with its recommendations within one-hundred and twenty (120) days of the establishment of the empowerment team. Section 1703–B(H) then provides that the Department shall return the improvement plan to the school board with its approval, or any request for modification, no more than thirty days after the plan has been submitted. Moreover, any further modifications by the team shall be transmitted to the Department by the school board. Section 1703–B(I) provides that amendments to an existing improvement plan may be transmitted to the Department, in a manner that the Department prescribes, whenever the empowerment team working with the school board decides that the amendments will improve the school district's performance. Section 1704–B(A) provides that the school board *shall* implement the school district improvement plan.

■ On appeal to this Court, Appellants now raise three questions for our review. They ask: 1) whether Common Pleas erred as a matter of law in finding that they are agencies and therefore subject to the Sunshine Act; 2) whether Common Pleas erred in finding that, if they are agencies under the Sunshine Act, their actions at Empowerment Team meetings constitute "official action" under the Sunshine Act; and 3) whether Common Pleas

---

team." (N.T., Testimony of Dr. Kenneth R. Kitch, Hearing of 9/26/2000, p. 19; R.R., p. 58a.) Again, we assume by use of the word "we" that Dr. Kitch meant the school board.

5. Pursuant to Section 1703–B(E)(1)(10), these methods/goals include:

(1) Identification of districtwide academic standards, which meet or exceed the academic standards under 22 Pa.Code, Ch. 4 (relating to academic standards and assessment).

(2) Performance goals, benchmarks and timetables to improve academic performance for the school district and each school in the school district that will enable the school district to be removed from the education empowerment list.

(3) Revisions to the curriculum, instructional practices and programming that will enable students to attain the academic standards under paragraph (1).

(4) A system of assessments to measure the performance of the school district, each school in the school district and students in meeting the academic standards under paragraph (1).

(5) A system of academic accountability that provides for specific consequences for students, each school in the school district and administrators for attaining or failing to attain levels of academic performance set forth in the school district improvement plan.

(6) Specific procedures to inform parents or guardians and the community of the performance of each school in the school district and to increase their participation.

(7) Specific policies and procedures to increase the authority to individual schools and responsibility for performance of individual schools, including granting individual schools greater control of their personnel, budget and educational program.

(8) A system of school selection that to the greatest extent possible allows parents to choose the public school in the district their child can attend.

(9) Professional development activities and programs that will assist teachers and administrators in enabling students to attain academic standards.

(10) Policies and procedures to assure a safe and secure environment in schools in the district.

was without subject matter jurisdiction to hear the matters at issue.[6]

 With respect to the first issue that Appellants raise—that is, whether Common Pleas erred in finding the Teams to be agencies under the Sunshine Act—we of course deem it necessary to quote the definition of "agency" as stated therein. Section 703 of the Act, 65 Pa.C.S. § 703, provides that an "agency" is:

[t]he body, *and all committees thereof authorized by the body* to take official action or *render advice on matters of agency business,* of all the following: the General Assembly, the executive branch of the government of this Commonwealth, including the Governor's Cabinet when meeting on official policy-making business, any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth or of any State, **municipal, township or school authority, school board, school governing body,** commission, the boards of trustees of all State-aided colleges and universities, the councils of trustees of all State-owned colleges and universities, the board of trustees of all State-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs or has for its purpose the performance of an essential government function and through the joint action of its members exercises governmental authority and takes official action. The term does not include a caucus or a meeting of an ethics committee created under rules of the Senate or House of Representatives.

(Emphasis added.)

We begin by noting that Appellants **are** properly classified as adhocracies, or temporary **committees,** of the school district, since, under Act 16, as already stated, it is the school district that establishes empowerment teams for the limited purpose of devising a school district improvement plan. *See* Section 1703–B(D)(1).[7] Because Act 16 provides that this plan shall set forth specific goals and methods for improving the educational performance of each of the schools and the school district, including, *inter alia,* identifying academic standards, revising curriculum, devising a system of performance assessments, devising a system of academic accountability, and creating policies and procedures for assuring a safe and secure environment in district schools, *see* Section 1703–B(E)(1)–(10), Appellants are obviously authorized to take "official action." The improvement plan, which is formulated by the empowerment team, contains the summation of the advice and recommendations that the team submits to the Department.

Section 703 of the Sunshine Act defines "official action" as any of the following:

(1) **Recommendations made by an agency pursuant to statute,** ordinance or executive order.

(2) **The establishment of policy by an agency.**

(3) **The decisions on agency business made by an agency.**

(4) The vote taken by an agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

(Emphasis added.) Further, Appellants are undoubtedly authorized to "render advice on matters of agency business[,]" which, according to section 703, encompasses "[t]he framing, preparation, making or enactment of laws, **policy** or regula-

---

6. Our review of the orders of Common Pleas granting the preliminary injunctions is limited to determining whether the record contains apparently reasonable grounds to justify the Court's action. *T.W. Phillips Gas and Oil Company v. Peoples Natural Gas Company,* 89 Pa.Cmwlth. 377, 492 A.2d 776 (1985).

7. In making this statement, we recognize that the language of Act 16 is obviously cryptic, since a school *district,* qua *district,* as opposed to the school board, cannot actually choose people to be members of an empowerment team.

tions . . . ." (Emphasis added.) Therefore, we agree with Common Pleas that Appellants are indeed agencies within the meaning of the Sunshine Act.

▮ Our conclusion in this regard would seem to end the matter, given the mandate of Section 704 of the Act, 65 Pa.C.S. § 704, that: "Official action and deliberations by a quorum of the members of an agency shall take place at a **meeting open to the public** . . . ." (Emphasis added.) Appellants, however, also argue that, even if we deem them to be agencies within the meaning of the Act, the type of action that they take at their meetings is not actually "official action," because Appellants serve merely as consultants to the school board and do not make recommendations that bind the Department. In propounding this argument, Appellants rely on *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 92 Pa.Cmwlth. 340, 500 A.2d 900, 905 (1985), *appeal granted*, 510 Pa. 361, 508 A.2d 550 (1986), *appeal dismissed*, 512 Pa. 636, 518 A.2d 263 (1986), a case involving a special investigation commission established by Philadelphia's mayor pursuant to that City's Home Rule Charter. *In FOP Lodge No. 5,* this Court explained:

> [T]he Commission, as established, **is a temporary, limited purpose, advisory board without authority to make a binding recommendation** which would affect the substantive rights of any individual. Thus, **this Commission lacks the essential character of the** zoning boards, **school boards,** utility commissions, etc., all of which are controlled by the Sunshine Law.

(Emphasis added.)

Appellants also rely, *inter alia*, on *League of Women Voters v. Commonwealth*, 683 A.2d 685 (Pa.Cmwlth. 1996), contending that that case highlights the extensive difference between "deliberation" by an agency and mere "discussion" by an agency. We of course recognize that "deliberation" is defined in the Sunshine Act as "[t]he discussion of agency business **held for the purpose of making a decision.**" Section 703 of the Act. (Emphasis added.)

Even so, we are not persuaded by Appellants' position, since, in the matter *sub judice*, it is Appellants who decide and deliberate—not just discuss—what specific methods and goals for improving educational performance they will set forth in the improvement plan. In other words, it is Appellants who create policy and make recommendations pursuant to Act 16, and the school board is, essentially, powerless to alter these recommendations in any way. Again, Section 1703–B(G) states clearly that "[t]he board of school directors **shall** transmit the final school district improvement plan to the department with its recommendations within one hundred twenty (120) days of the establishment of the school district empowerment team under subsection (D)." (Emphasis added.) The school board is prohibited from altering the plan, except that it may itself make recommendations to the Department.

Further, Act 16 is silent on the issue of whether the Department can actually reject the improvement plan developed by Appellants, and the mere fact that the Department shall either approve the plan or request that it be modified within thirty days does not obviate the more compelling fact that it is Appellants who have sole control of the recommendations that are transmitted by the school board to the Department for "approval." In other words, no course of action or policy with respect to improving the schools and school district can be effected unless Appellants decide to recommend such action or policy first. For this reason, we have little choice but to agree with Common Pleas that, for as long as they are in existence pursuant to Act 16, Appellants serve as *de facto* school boards.

▮ We also do not agree with Appellants that, because Section 1703–B(F) of Act 16 provides that they are required to hold at least one public **hearing** before

submitting their plan to the school board, and because they must make the plan available for public inspection at least ten days before its submission to the school board, the Sunshine Act's open **meeting** requirement is inapplicable to them. According to Webster's Third New International Dictionary 1044 (3d ed.1986), a "hearing" is defined as:

> (1) a trial in equity practice (2) a listening to arguments or proofs and arguments in interlocutory proceedings (3) a preliminary examination in criminal procedure (4) a trial before an administrative tribunal [or] a session (as of a congressional committee) in which witnesses are heard and testimony is taken. . . .

See also Commonwealth v. Davis, 531 Pa. 272, 612 A.2d 426 (1992). The term "meeting," however, is defined in Section 703 of the Sunshine Act as "[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." It simply cannot be logically argued that the word "hearing" and the word "meeting" are interchangeable, and we reject Appellants' assertion that the public hearing requirement of Act 16 conflicts with the open meeting requirement of the Sunshine Act. Because the word "hearing" in Act 16 and the word "meeting" in the Sunshine Act are both clear and free from ambiguity, we will not disregard the letter of the law under the pretext of pursuing its spirit. See Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b).

■ Last, Appellants argue that, because Common Pleas found them to be **state** agencies, Common Pleas was without subject matter jurisdiction to decide this matter in the first instance. However, in this regard, Common Pleas specifically and cogently stated:

The Team, as determined earlier, is considered by this Court to be an agency as defined by the Act. It is also quite clear that the Team's goals concern a **wholly local endeavor,** namely the betterment of the academic environment within the Harrisburg School District. As both the District and this Court are situated within Dauphin County, we find that this Court is the proper forum for a determination of this dispute.

Patriot–News Company v. Empowerment Team of the Harrisburg School District (No. 5728, filed October 3, 2000), slip op. at 23. (Emphasis added.) (Footnote omitted.)[8] Moreover, this Court has previously held that school boards are local agencies, see, e.g., Lesoine v. Arena, 688 A.2d 802 (Pa.Cmwlth.1997), and we are satisfied, as was Common Pleas, that Appellants in this case serve as de facto school boards. Therefore, contrary to Appellants' assertion, we hold that jurisdiction was originally proper in Common Pleas, because they are local agencies.

■ That said, we must now decide whether there were any "apparently reasonable grounds" for the entry of the preliminary injunctions by Common Pleas in this case. The law is well settled that a court is able to grant a preliminary injunction only where the movants establish all of the elements required to satisfy their burden of proof. T.W. Phillips Gas and Oil Company v. Peoples Natural Gas Company, 89 Pa.Cmwlth. 377, 492 A.2d 776 (1985). As we explained many years ago in Committee of Seventy v. Albert, 33 Pa.Cmwlth. 44, 381 A.2d 188, 190 (1977) (citations omitted):

Three criteria have been established for the granting of a preliminary injunction, which, as a harsh and extraordinary remedy, is to be granted only when and if each criteria has been fully and completely established. . . . They are: (1) the preliminary injunction must be

---

**8.** Common Pleas also rendered this argument applicable to the Steelton–Highspire Empowerment Team, since, according to Common Pleas, the issue of jurisdiction was only raised tangentially by counsel for that team.

necessary to prevent immediate and irreparable harm which could not be compensated for by damages; (2) greater injury would result from the denial of the preliminary injunction than from the granting of it; and (3) it would operate to restore the parties to the status quo as it existed prior to the alleged wrongful conduct. In addition to meeting all three criteria, the court must be convinced that plaintiffs' right to a preliminary injunction is clear ... and general equity jurisdiction must be warranted.

*See also T.W. Phillips.* Of course, the movants do not have to prove an absolute right to relief in order to obtain a preliminary injunction; instead, if the other elements necessary for a preliminary injunction exist, and substantial legal questions are raised by the underlying legal claim, their "right to relief is clear." *Id.* at 780–781.

Here, there is no question that Common Pleas' entry of the preliminary injunctions was necessary to prevent immediate and irreparable harm. Because Appellants were undertaking "official action," their meetings were required to be open to the public. To the extent that the deliberations were closed, the public was harmed by a denial of the opportunity to witness the decisions being made by these very important local agencies in the public interest. Further, such harm could not be compensated for by damages, since there is no price tag that can be placed on the public's trust in the agencies empowered to aid it and on the public's evaluation of the decision-making process. Given the fact that Appellants in this case have only one-hundred and twenty days in which to complete their tasks, the immediacy of the harm in denying the public access to these meetings cannot be denied. As well, this Court notes the fact that Act 16 is, in many instances, poorly written, and, as previously stated, does not precisely enunciate how all of the members of the empowerment teams were to be chosen. This lack of clarity supports the incontrovertible conclusion that greater injury would have resulted from the denial of the preliminary injunctions than from the granting of them, where the public has a right to ensure that its interests are being adequately represented. Of course, any minor, alleged "injury" to the improvement plan process arising from the subjective reactions of some members of the teams to a media presence must necessarily bow to the greater injury to the public's interest in information that would have accrued from a denial of the preliminary injunctions. Moreover, while we agree with Common Pleas that the grant of the preliminary injunctions did not actually restore the status quo, since there was no status quo to be restored, it at least gave Appellees, who represent the public, a clearer view of the decision-making process of these agencies, which access had been denied before the injunctions were entered. It is obvious, then, that Appellees met their burden of proving their entitlement to the preliminary injunctions in question, and that they also raised substantial legal questions in their underlying claims, entitling them to injunctive relief.

Because Common Pleas had reasonable grounds for granting the requested preliminary injunctions, the orders of that Court in the above-captioned matters are hereby affirmed.

Judge SMITH and Judge KELLEY, concur in the result only.

### ORDER

AND NOW, December 4, 2000, the order of the Court of Common Pleas of Dauphin County, No 5727, dated September 27, 2000, which continued a preliminary injunction that it had previously entered, and the order of the Court of Common Pleas of Dauphin County, No. 5728, dated October 3, 2000, which issued a preliminary injunction, are hereby affirmed.