**Herbert L. JOSEPH, II, Appellant**

v.

## ALLEGHENY COUNTY AIRPORT AUTHORITY.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 2003.

Decided Feb. 10, 2004.

---

Herbert L. Joseph, II, Pittsburgh, for appellant.

David E. Holliday, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Herbert L. Joseph, II, (Joseph) appeals *pro se* from the April 30, 2003, order, entered May 1, 2003, of the Court of Common Pleas of Allegheny County (trial court), which dismissed his complaint for lack of jurisdiction.

Joseph operates a limousine transportation and entertainment service, which provides transportation to and from the Pittsburgh International Airport (Airport).[1]

---

1. Joseph's service is known as Jeunne Noir Enterprises or J.N. Enterprises, and he alleges that, in 1997, he obtained the original permit to run the service from the Allegheny

On March 16, 2001, the Allegheny County Airport Authority (Authority) [2] promulgated ground transportation regulations, effective May 1, 2001, that set forth conditions for obtaining ground transportation permits from the Authority. Specifically, section 3.4.2.4 of the Authority's regulations provide:

> 3.4.2.4   As a primary condition of any ground transportation permit to be issued to any Limousine Services providing passenger transportation services to and from the Airport, each Limousine Service shall comply with the following:
>
> (a) if the applicant is an INTRA-STATE provider of point-to-point limousine services within the Commonwealth of Pennsylvania, the applicant shall obtain from the [Pennsylvania Public Utility Commission] PUC a certificate of public convenience in order to operate such service to or from the Airport.
>
> (b) if the applicant is an INTER-STATE provider of limousine services which does not provide point-to-point services within the Commonwealth of Pennsylvania, the applicant shall obtain operating authority from and comply with all regulations promulgated by the Federal Highway Administration.

(Section 3.4.2.4 of the Authority's Regulations). The Authority also enacted a temporary regulation, providing for the issuance of Provisional Ground Transportation Permits (Provisional Permit), under which intrastate ground transportation service providers could operate at the Airport while their applications for Certificates of Public Convenience were pending before the PUC.[3]

Pursuant to the regulations, Joseph applied to the PUC for a Certificate of Public Convenience as part of his application for a ground transportation permit for the term May 1, 2001, through April 30, 2002. While his application for a Certificate of Public Convenience remained pending before the PUC, the Authority issued Joseph a Provisional Permit for the permit term beginning May 1, 2001. (Answer, ¶ 3.) However, on December 10, 2001, the PUC denied Joseph's application for a Certificate of Public Convenience based on his failure to establish financial fitness as required by PUC regulations. Consequently, by letter dated December 21, 2001, the Authority revoked Joseph's Provisional Permit, effective Friday, December 28, 2001.[4]   (Answer, ¶ 8.)

■   On January 25, 2002, Joseph filed a complaint in mandamus in the trial court,

---

County Airport Authority (Authority). (Complaint, ¶ 3.)

2.  The Authority was created pursuant to the Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, 53 P.S. §§ 301–307, *repealed by* Act of June 19, 2001, P.L. 287, which is now codified as the Municipality Authorities Act, 53 Pa.C.S. §§ 5601–5622. The Authority, *inter alia*, manages the day-to-day operations of the Airport. (Answer, ¶ 2.)

3.  Originally, Provisional Permits were to expire on October 31, 2001; however, if the PUC had not rejected the application for a Certificate of Public Convenience by that date, an extension would be granted to De-

cember 31, 2001. (Authority's Regulations effective November 1, 2001, § 2.) It is unclear from the record whether the term for Provisional Permits was extended beyond December 31, 2001; the record states only that the matter would be re-considered if warranted. (Authority's memo of November 29, 2001.)

4.  In response to the PUC's failure to issue him a Certificate of Public Convenience, Joseph filed an application for stay with this court. This court granted a stay on December 27, 2001; however, when we vacated the stay on January 10, 2002, the Authority again notified Joseph of the revocation of his Provisional Permit on January 22, 2002. (Answer, ¶ 8.)

requesting that the trial court enter judgment against the Authority, "directing the issuance on [sic] an operating permit to him and for damages and costs."[5] (Complaint.) The trial court dismissed Joseph's complaint for lack of jurisdiction, stating, "it appears this court does not have jurisdiction over this matter and hereby dismisses the case. It is noted that [Joseph's] application for a P.U.C. certificate is filed and pending before the P.U.C., and this court cannot regulate the processing of the said application before the P.U.C." (Trial ct. order.) Joseph now appeals to this court.[6]

Joseph argues that the trial court's conclusion that it lacked jurisdiction was erroneous and resulted from the trial court's mistaken belief that Joseph sought to have the trial court "regulate" his application before the PUC. We agree. Although not artfully expressed, Joseph's *pro se* pleading does not ask the trial court to "regulate the processing" of Joseph's application before the PUC, as the trial court believed.

Jurisdiction lies if the court has the power to adjudicate the subject matter before it and does not depend on whether it might ultimately decide that it cannot grant the relief sought. *Drafto Corporation v. National Fuel Gas Distribution Corporation,* 806 A.2d 9 (Pa.Super.2002), *appeal denied,* 572 Pa. 765, 819 A.2d 547 (2003). Original jurisdiction of suits against municipal or other local authorities lies with the courts of common pleas. *See* Section 931 of the Judicial Code, 42 Pa. C.S. § 931 (stating that the courts of common pleas shall have unlimited original jurisdiction over all actions and proceedings except where exclusive original jurisdiction is vested with another court of the Commonwealth of Pennsylvania);[7] *O'Hare*

---

**5.** "Mandamus is available to compel the performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and the want of any other adequate and appropriate remedy." *Donnell v. Pennsylvania Board of Probation and Parole,* 61 Pa.Cmwlth. 517, 434 A.2d 846 (1981).

**6.** Our scope of review of this case, which presents solely a question of law, is plenary. *Ladd v. Department of Transportation, Bureau of Driver Licensing,* 753 A.2d 318 (Pa.Cmwlth. 2000).

**7.** 42 Pa.C.S. § 931(a) and (b) provide:
(a) **General rule.**—Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.
(b) **Concurrent and exclusive jurisdiction.**—The jurisdiction of the courts of common pleas under this section shall be exclusive except with respect to actions and proceedings concurrent jurisdiction of which is by statute or by general rule adopted pursuant to section 503 vested in another court of this Commonwealth or in the district justices.

Original jurisdiction of this matter is not vested in another court of this Commonwealth. Specifically, we note that this court does not have original jurisdiction over this matter. The Commonwealth Court has original jurisdiction of civil actions or proceedings against the Commonwealth government, section 761 of the Judicial Code, 42 Pa.C.S. § 761(a); however, the Judicial Code excludes municipal and other local authorities from the definition of Commonwealth government, section 102 of the Judicial Code, 42 Pa.C.S. § 102. We further note that, on April 23, 2003, Joseph filed a Petition for Writ of Mandamus against the Authority with this court. (*Joseph v. Allegheny Airport Authority,* 263 M.D. 2003). However, by *per curiam* order dated April 29, 2003, and entered April 30, 2003, this court transferred the matter to the trial court because this court did not have jurisdiction.

*v. County of Northampton,* 782 A.2d 7 (Pa.Cmwlth.2001) (holding that the court of common pleas had original jurisdiction over a Municipal Authorities Act claim); *cf. Patriot–News Co. v. Empowerment Team of Harrisburg School District Members,* 763 A.2d 539 (Pa.Cmwlth.2000) (holding that original jurisdiction was properly in the court of common pleas because the defendants were local agencies); *E–Z Parks, Inc. v. Larson,* 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985) (transferring a count against a local agency from this court's original jurisdiction to the court of common pleas), *aff'd,* 509 Pa. 496, 503 A.2d 931 (1986). Therefore, the trial court's dismissal of Joseph's complaint for lack of jurisdiction was error. Ordinarily, having made this determination, we would remand the matter to the trial court for adjudication. However, in the interest of judicial economy, we will not do so here because Joseph cannot prevail on the merits of his claim.

In his complaint, Joseph alleges entitlement to an operating permit from the Authority on two separate grounds. First, Joseph alleges that an insignificant number of his clients go to states other than Pennsylvania and that he has an FHA certificate. Thus, he asserts that he is entitled to an operating permit from the Authority covering the period May 1, 2001, through April 30, 2002, under section 3.4.2.4(b) of the Authority's regulations, and he maintains that the Authority has wrongly applied section 3.4.2.4(a) to him.[8]

Second, Joseph alleges that, within Pennsylvania, he operates only within Allegheny County, and because the PUC does not have jurisdiction over limousine operations solely within Allegheny County, it is improper for the Authority to require that he obtain operating authority from the PUC. (Complaint, ¶¶ 6–9.)

Initially, we note that the period for which Joseph seeks a permit has passed, and, consequently, the case must be dismissed as moot unless it falls within an exception to the mootness doctrine. *Erie Homes for Children and Adults, Inc. v. Department of Public Welfare,* 833 A.2d 1201 (Pa.Cmwlth.2003) (stating that a case which may be rendered moot will not be dismissed where the issues raised are of a recurring nature and capable of repeatedly avoiding review; a case is capable of repetition yet evading review when the duration of the challenged action is too short to be litigated and there is a reasonable probability that the complaining party will be subjected to the same action in the future). Although Joseph's second argument, i.e., that the PUC does not have jurisdiction over limousine services that operate solely within Allegheny County, is rendered moot,[9] the same cannot be said for his first argument.

■ Although the period for which Joseph currently seeks a permit has passed, the question of whether Joseph would be entitled to a permit by virtue of falling within section 3.4.2.4(b) would arise again

8. In its Answer, the Authority does not dispute Joseph's compliance with section 3.4.2.4(b) of the Authority's regulations; however, the Authority argues that, because Joseph also is an *intrastate* provider of point-to-point services within the Commonwealth of Pennsylvania, section 3.4.2.4(a) applies to Joseph. (Answer, ¶ 8; *see* Answer, ¶ 6.) That section requires Joseph to obtain a Certificate of Public Convenience from the PUC as a

condition to having the Authority issue him a permit.

9. By legislation effective April 2, 2002, in order to operate a limousine service in a second class county (i.e., Allegheny County), the PUC must issue a Certificate of Public Convenience. Section 1122 of the Public Utility Code, 66 Pa.C.S. § 1122. Given this legislation, this particular issue is not capable of repetition and, therefore, is moot.

with respect to any future operating permit for which he, or anyone else who has an FHA permit, would apply. Moreover, because operating permits are only valid for one year, the question could repeatedly avoid review. Therefore, as this issue is of a recurring nature and capable of repeatedly avoiding review, it is not moot. *Erie Homes.*

■ This remaining issue presents a straightforward interpretation of the challenged regulation. Based on its plain language, section 3.4.2.4(b) excludes those interstate limousine services providers who are *also* intrastate providers of point-to-point limousine services within the Commonwealth; the result being that those providers, such as Joseph,[10] must comply with section 3.4.2.4(a) and obtain a Certificate of Public Convenience from the PUC as a condition to being issued an operating permit from the Authority. The fact that Joseph also may fall within section 3.4.2.4(b), and has satisfied that section's requirement, is irrelevant; it neither excludes Joseph from the purview of section 3.4.2.4(a) nor entitles Joseph to an operating permit from the Authority.[11]

Accordingly, we affirm the trial court on other grounds.

### ORDER

AND NOW, this 10th day of February, 2004, the order of the Court of Common Pleas of Allegheny County, dated April 30, 2003, and entered May 1, 2003, is hereby affirmed on other grounds.

10. Joseph admits in his complaint that he is an intrastate provider.

11. Based on the Authority's brief, it appears that the Authority has amended section 3.4.2.4 of its regulations to expressly state that if the provider of limousine services is both an interstate and intrastate provider, the provider must obtain an FHA certificate *and* a certificate of public convenience from the PUC. (Authority's brief at 2.)